UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JONATHAN HARTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-02055-TWP-MJD |
| | ) |
| ARAMARK CORRECTIONAL SERVICES, LLP, | ) |
| CENTURION HEALTH OF INDIANA, LLC, | ) |
| TISCH THOMPSON, | ) |
| DEBRA HALL, | ) |
| ASHLY, | ) |
| TODD SHIEFEL, | ) |
| DALTON ALBRECHT, | ) |
| DENNIS REAGLE, | ) |
| KYLE MCKINNEY, | ) |
| CATHLEEN SIMONE, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on *pro se* Plaintiff Jonathan Hartman's ("Hartman") Motion to for Leave to File Second Amended Complaint (Dkt. 13) and Motion for Leave to File Third Amended Complaint (Dkt. 15). Hartman is currently incarcerated at Pendleton Correctional Facility ("Pendleton"). On October 8, 2025, he initiated this 42 U.S.C. § 1983 action alleging the Defendants violated his Eighth Amendment rights by depriving him of adequate food, hygiene, and sanitation during a lockdown at Pendleton. (Dkt. 2). Hartman's motion for leave to file a Third Amended Complaint, is **granted**, and the Court will now screen the Third Amended Complaint pursuant to 28 U.S.C. § 1915A(a), (c). Hartman's s motion to for leave to file a Second Amended Complaint is **denied as moot**.

## I. SCREENING STANDARD

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE THIRD AMENDED COMPLAINT

The Court accepts Mr. Hartman's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)).

Hartman names the following as defendants: (1) Centurion Health of Indiana, LLC ("Centurion"); (2) Aramark Correctional Services, LLC ("Aramark"); (3) Tisch Thompson, Aramark Food Service Director; (4) S. Robbins, Aramark Dietician; (5) Brandon Pherson, Aramark Food Service Manager; (6) Nate Pulley, Aramark Food Service Manager; (7) Debra Hall, Aramark Food Service Supervisor; (8) Lori Fisher, Aramark Food Service Supervisor; (9) Ashly, Aramark Food Services Supervisor; (10) Todd Shiefel, Aramark Food Service Supervisor; (11)

Dalton Albrecht, Aramark Food Service Supervisor; (12) Dennis Reagle, former Warden of Pendleton; (13) Lt. Kyle McKinney; (14) Lt. Cathleen Simone; and (15) Johnathan Jackson, Pest Exterminator. Dkt. 15-1.

Pendleton entered a facility-wide lockdown from around September of 2023 until around January of 2024 and then again from July of 2024 through August of 2024. Dkt. 15-1, ¶ 84. During that time, Hartman alleges that he suffered from the following conditions.

i. **Food Deprivation/Inadequate Food Portions/Unsanitary Food**

Pendleton has a contract with Aramark to provide meals for inmates pursuant to a "Master Menu," where standard meals amount to 2500 to 2800 daily calories. *Id.*, ¶ 96. During lockdowns, Aramark and its employees, Thompson, Hall, Ashly, Robbins, Fisher, Pherson, Pulley, Shiefel, and Albrecht, oversaw the routine service of food that did not meet the published dietary requirements. *Id.*, ¶¶ 97–99. Instead, the lockdown meals were rotten, watered down, unsanitary, and contaminated. *See, generally, id.*, ¶¶ 81–102. These defendants also served calorically inadequate meals, even starving Hartman for eleven-day periods. *Id.*, ¶ 97. When inmates such as Hartman were provided with meals, they were provided with "lockdown meals," which were too small, did not meet their nutritional requirements, and included rotten and contaminated food. *Id.*, ¶¶ 89–90. Hartman alleges that these lockdown meals were used to punish him and other inmates. *Id.*, ¶ 89. Hartman informed Warden Reagle that the meals were inadequate, contaminated, and rotten, but Warden Reagle either ignored the issue or stated that it "was not [his] problem." *Id.*, ¶ 132.

Warden Reagle, Lt. McKinney, and Lt. Simone restricted inmates' access to commissary, which made it so that Hartman could not purchase food. *Id.*, ¶¶ 126–28, 140. They then denied Hartman indigent food packets. *Id.*, ¶ 140.

As a result of the food conditions and deprivation, Hartman starved for eleven days, lost weight, suffered severe hunger pains and mental distress, as well as other physical conditions such as increased blood pressure, muscle pain, and fatigue. *Id.*, ¶¶ 97–98.

### ii. Lack of Access to Hygiene Materials/Unsanitary Conditions

Because commissary was "cut off for months," Hartman could not purchase hygiene items for himself. *Id.*, ¶¶, 126, 140. Lt. McKinney, and Lt. Simone were responsible for providing hygiene kits to inmates. *Id.*, ¶ 127. However, these defendants, along with Warden Reagle, conspired and refused to provide Hartman with one to punish him and retaliate against his complaints about prison conditions. During this time, Hartman did not have soap or toothpaste and was only given one towel. *Id.*, ¶¶ 130–34. Hartman's dorm was also infested with mice and cockroaches. *Id.*, ¶¶ 106–107, 135. Jackson was responsible for extermination, but failed to do so, in conspiracy with Warden Reagle, Lt. Simone, and Lt. McKinney. *Id.*, ¶¶ 137–38. Hartman could not clean because he did not have access to cleaning supplies. *Id.*, ¶ 134. Despite being aware of these problems and having the power to intervene, Warden Reagle, Lt. Simone, and Lt. McKinney did not do anything to stop them.

As a result of these conditions, Hartman suffered from sleep deprivation, and other psychological and physical problems. *Id.*, ¶ 103.

### iii. Lack of Access to Medical Care

Hartman alleges that Centurion has a practice of denying medical care during lockdowns, which meant that he could not receive healthcare during the relevant time period. *Id.*, ¶ 144. Among other things, medical staff would not weigh Hartman so that he could document his weight loss. *Id.* ¶ 145. Centurion denied access to medical care in concert with Warden Reagle in order to punish inmates and hide their suffering.

### iv. Retaliation

Hartman filed grievances against Aramark and its employees. *Id.*, ¶ 26. As a result, Hartman alleges that Aramark and its employees instituted a custom of retaliating against him by serving unsanitary and nutritionally inadequate food. *Id.* Hartman alleges that the Aramark Defendants' above-described actions were designed to retaliate against him for filing these grievances. *Id.*, ¶¶ 116–21.

Hartman also filed grievances against Jackson and Warden Reagle about pest infestation and Aramark's practices. *Id.*, ¶¶ 78, 156. Hartman alleges that these defendants, along with Lt. Simone and Lt. McKinney, conspired with Aramark to deprive him of nutrition and hygiene during the lockdown in retaliation for his grievances. *Id.*, ¶¶ 156–57.

### v. Relief

Hartman seeks declaratory relief, compensatory and punitive damages, as well as any just relief.

### III. Discussion of Claims

Applying the screening standard to the factual allegations in the complaint, the following claims **shall proceed** as pled in the Third Amended Complaint:

- Eighth Amendment conditions-of-confinement claims against Warden Reagle, Lt. McKinney, Lt. Simone, Jackson, Thompson, Robbins, Pulley, Pherson, Hall, Fisher, Ashley, Shiefel, Albrecht, and Aramark. Eighth Amendment claims against Aramark shall proceed under the theory recognized in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

- Eighth Amendment deliberate indifference to medical needs claims against Warden Reagle and Centurion. Eighth Amendment claims against Centurion will proceed under the *Monell* theory.

- First Amendment retaliation claims against Warden Reagle, Lt. McKinney, Lt. Simone, Jackson, Thompson, Robbins, Pulley, Pherson, Hall, Fisher, Ashley, Shiefel, and Albrecht. All other claims are dismissed.

### IV. Conclusion and Service of Process

Hartman's Motion for Leave to File Third Amended Complaint, Dkt. [15], is **GRANTED**, and the proposed amended complaint, (Dkt. 15-1), is treated as the operative complaint. The **clerk is directed** to re-docket the proposed amended complaint at Dkt. 15-1 as the Third Amended Complaint as of the date of this order.

Motion for Leave to File Second Amended Complaint, Dkt. [13], is **DENIED AS MOOT**.

The claims described above are proceeding in this action. All other claims have been dismissed. The **clerk is directed** to add Centurion Health of Indiana, LLC, S. Robbins, Nate Pulley, Brandon Pherson, and Johnathan Jackson, as defendants on the docket.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to the defendants in the manner specified by Rule 4(d). Process shall consist of the Third Amended Complaint, Dkt. [15-1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve Centurion electronically.

The **clerk is directed** to serve the IDOC employees electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

Date: 12/16/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JONATHAN HARTMAN
198454
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Electronic service to Indiana Department of Correction:
    Warden Dennis Reagle
    Lt. Kyle McKinney
    Lt. Cathleen Simone
    Johnathan Jackson

    (All at Pendleton Correctional Facility)

Electronic service to Centurion

Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Tisch Thompson
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

S. Robbins
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Nate Pulley
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Brandon Pherson
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Debra Hall
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Lori Fisher
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Ashly
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Todd Shiefel
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Dalton Albrecht
Aramark Correctional Services, LLC
C/O CT Corporation System
334 North Senate Ave.
Indianapolis, IN 46204

Courtesy copy to:

Christopher Cody
Hume Smith Geddes Green & Simmons, LLP
54 Monument Circle, Suite 400
Indianapolis, IN  46204