UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JONATHAN HARTMAN,<br><br>Plaintiff,<br><br>v.<br><br>ARAMARK CORRECTIONAL SERVICES, LLP,<br>CENTURION HEALTH OF INDIANA, LLC,<br>TISCH THOMPSON,<br>DEBRA HALL,<br>ASHLY,<br>TODD SHIEFEL,<br>DALTON ALBRECHT,<br>DENNIS REAGLE,<br>KYLE MCKINNEY,<br>CATHLEEN SIMONE,<br>S. ROBBINS,<br>NATE PULLEY,<br>BRANDON PHERSON,<br>JOHNATHAN JACKSON,<br>LORI FISHER,<br><br>Defendants. | ) | No. 1:25-cv-02055-TWP-MKK |

**ORDER GRANTING DEFENDANT CENTURION HEALTH'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Centurion Health of Indiana, LLC's ("Centurion") Motion for Summary Judgment. (Dkt. 56). Plaintiff Jonathan Hartman ("Hartman") filed this action contending that his constitutional rights were violated while he was incarcerated at the Pendleton Correctional Facility ("Pendleton"). *Id.* Hartman proceeds on an Eighth Amendment *Monell* claim against Centurion based on allegations that Centurion implemented a practice of restricting access to medical care during a series of lockdowns at Pendleton. (Dkt. 17). Centurion argues that Hartman failed to exhaust his available administrative remedies as required

by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.[1] For the reasons explained below, Centurion's motion for summary judgment is **granted** and Hartman's claims against Centurion are **dismissed without prejudice.**

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

[1] The remaining defendants have withdrawn the affirmative defense of exhaustion. (*See* Dkt. 66).

## II. FACTUAL BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Plaintiffs as the nonmoving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. Offender Grievance Process

At all times relevant to the claims in this suit, Hartman was incarcerated at Pendleton, a prison maintained by the Indiana Department of Correction ("IDOC"). (Dkt. 18). The IDOC has a standardized offender grievance process which was in place during the time Hartman alleges his rights were violated. (Dkt. 56-1 ¶ 3 (Bookout Aff.)). Pendleton provides inmates with access to the grievance policy and required forms through the law library, tablets, counselor distribution, and the handbook. *Id.* ¶ 4.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the IDOC's policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies using that procedure. (Dkt. 71-1 at 1–15.)[2] During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee "by completing the appropriate sections of the [Grievance Appeal form]"; and (3) submitting a written appeal to the IDOC Grievance Manager "by check[ing] the "Disagree" box," signing, and submitting the completed form. *Id.* at 3, 12.

[2] The parties dispute whether the Offender Grievance Process described in Grievance Specialist Chloe Bookout's affidavit was in effect during the relevant time. (Dkt. 71 at 8). Because Centurion has not produced the IDOC policy referenced by Ms. Bookout, the Court relies on the policy produced by Hartman and cited by Centurion in its reply.

If an offender does not receive a response from the Grievance Specialist "within twenty (20) business days of the Offender Grievance Specialist's receipt of the grievance, the offender may appeal as though the grievance had been denied." *Id.* at 11. "If no appeal response is received after the ten (10) business days, the appeal shall be considered as denied." *Id.* at 13.

**B. Plaintiff's Participation in the Grievance Process**

After conducting a search of Hartman's grievance records, the custodian of records for inmate grievances, Chloe Bookout, did not locate any grievances related to Hartman's allegations against Centurion in this lawsuit. (Dkt. 56-1 ¶¶ 1, 6–7).

Hartman testified that he submitted a grievance against Centurion on November 3, 2023, complaining about medical staff refusing to see him for his complaints about lockdown conditions and weight loss. (Dkt. 73 ¶ 17, Dkt. 71-1 at 1). The grievance specialist did not stamp this grievance as received or assign it a grievance number. After not receiving a response from the grievance specialist, Hartman notified the grievance specialist on November 17, 2023. (Dkt. 73 ¶ 19). On December 1, 2023, Hartman appealed the November 3 grievance as though it had been denied. *Id.* ¶ 22; (Dkt. 71-1 at 19). Hartman did not receive a response to his appeal. (Dkt. 73 ¶ 23).

## III. <u>DISCUSSION</u>

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d

325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," Centurion faces the burden of establishing that "an administrative remedy was available and that [Hartman] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). "An inmate must comply with the administrative grievance process that the State establishes.…" *Id*.; *see also Ross,* 578 U.S. at 639 (the mandatory language of the PLRA "means a court may not excuse a failure to exhaust…").

Centurion makes many arguments as to why Hartman's testimony and exhibits do not show that he successfully exhausted his administrative remedies, only one of which is dispositive. The undisputed record shows that Hartman did not appeal the November 3, 2023 grievance to the final level by submitting it to the IDOC's Grievance Manager. Initially, Hartman followed the Offender Grievance Process by submitting the grievance on November 3, 2023 and then submitting an appeal to the Warden on December 1, 2023 after not receiving a response from the grievance specialist. (Dkt. 71-1 at 11). Nevertheless, Hartman did not follow the instructions to treat the appeal as denied upon not receiving a response within 10 business days. *Id.* at 13. The Offender

Grievance Policy and the Grievance Appeal Form instruct inmates to appeal the Warden's decision by checking the "Disagree" box, signing, and submitting the completed form to the IDOC's Grievance Manager. *Id.* at 12; *see* (Dkt. 71-1 at 19). There is no evidence—neither testimony nor documentary—that Hartman completed this last step.

Therefore, Centurion has met its burden of proving that Hartman "had available [administrative] remedies that he did not utilize." *Dale*, 376 F.3d at 656. The undisputed record reflects that Hartman was aware of the grievance process and failed to complete the process by sending his appeal to the IDOC's Grievance Manager after not receiving a response from the Warden. The consequence of his failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that his claims against Centurion must be dismissed without prejudice. *Id*; *see also Ford v. Johnson,* 362 F.3d 395, 401 (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

## IV. CONCLUSION

For the above reasons, Centurion's Motion for Summary Judgment, Dkt. [56], is **GRANTED**. The claims against Centurion are dismissed without prejudice. To avoid piecemeal appeals, no partial final judgment shall issue at this time.

The **clerk is directed** to terminate Centurion as a defendant on the docket.

**IT IS SO ORDERED.**

Date: October 26, 2026

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

JONATHAN HARTMAN
198454
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Benjamin Daniel Ice
Barrett & McNagny
bdi@barrettlaw.com

Elijah B. Mollet
Lewis And Wilkins LLP
emollet@lewisandwilkins.com

Georgianna Lea Quinn
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com